UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CHRISTOPHER SCOCCO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIQURE N.V., MATTHEW KAPUSTA, CHRISTIAN KLEMT, WALID ABI-SAAB, and SARAH TABRIZI,<br><br>Defendants. | Case No.  1:26-cv-01124-JPC |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF YUNG-TIEN TIEN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 7

      I.      TIEN SHOULD BE APPOINTED LEAD PLAINTIFF ......................................... 7

            A.      Tien Is Willing to Serve as Class Representative ....................................... 8

            B.      Tien Has the "Largest Financial Interest" ..................................................... 9

            C.      Tien Otherwise Satisfies Rule 23's Requirements .................................... 10

            D.      Tien Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ............................................................. 12

      II.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................................................. 13

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...................................................................................................9

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018).............................9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..........................9

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ......................................12

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................12

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 112 (S.D.N.Y. 2010) .............................................................................................11

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) .............................................................................................13

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)......................................................................................9

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)....................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ................................................................................................13

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .......................9

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................9

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ....................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998). Moreover, the Complaint in the Action...............................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................................9

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

Securities Exchange Act of 1934........................................................................1, 9, 11

**Other Authorities**

Fed. R. Civ. P. 23............................................................................................ *passim*

iii

Yung-Tien Tien ("Tien") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Tien as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities who purchased or otherwise acquired uniQure N.V. ("uniQure" or the "Company") ordinary shares between September 24, 2025, and October 31, 2025, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer") as Co-Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  uniQure investors, including Tien, incurred significant losses following the disclosures of the Defendants' alleged fraud, which caused uniQure's ordinary share price to fall sharply, damaging Tien and other uniQure investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the litigation and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Tien: (1) purchased 70 uniQure ordinary shares; (2) purchased a net total of 70 uniQure ordinary shares; (3) expended $3,850 in net funds on uniQure ordinary shares; and (4) as a result of the disclosures of the Defendants' alleged fraud, incurred losses of approximately $2,107.  *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A.  Accordingly, Tien believes that he has the largest

financial interest in the relief sought in this litigation.  Beyond his considerable financial interest, Tien also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Tien has selected Pomerantz and Holzer as Co-Lead Counsel for the Class.  These firms and their attorneys are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Tien respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz and Holzer as Co-Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, uniQure is a biotechnology company developing gene therapies for rare diseases, including Huntington's disease ("HD"), amyotrophic lateral sclerosis caused by mutations in superoxide dismutase 1, refractory mesial temporal lobe epilepsy, and Fabry disease.  uniQure is incorporated in the Netherlands with its principal executive offices in Amsterdam, the Netherlands.  Its ordinary shares trade on the Nasdaq Stock Market under the ticker symbol "QURE."

The Company's leading drug candidate is AMT-130, a novel gene therapy being developed to slow the progression of HD, a usually fatal, inherited genetic disorder that causes nerve cells in the brain to break down, leading to problems with movement and thinking, as well as psychiatric issues.  There is no existing cure or approved means for slowing the progression of the disease.

Some drugs can address certain HD symptoms, but do not halt its progression to a usually fatal outcome.

AMT-130 is one of a very few drugs in testing intended to slow the progression of HD.  In March 2022, uniQure completed patient enrollment for two, ongoing multi-center, dose-escalating Phase I/II clinical trials for AMT-130 called the Pivotal Phase I/II Study of AMT-130 in patients with Huntington's Disease (the "Pivotal Study").

According to the Defendants, the U.S. Food and Drug Administration ("FDA") previously agreed that uniQure's Pivotal Study would not include any placebo comparator, but instead, the Pivotal Study results could be compared to an external historical data set, known as Enroll-HD or ENROLL-HD,[1] and the analysis derived from such comparison potentially could serve as the basis for uniQure's Biologics License Application ("BLA") submission to the FDA for approval to use AMT-130 to treat patients with HD.

Indeed, on June 2, 2025, Defendant Matthew Kapusta ("Kapusta"), the Company's Chief Executive Officer, assured investors that the FDA had agreed that the "primary efficacy analysis" will be based on the three-year change in the composite Unified Huntington's Disease Rating Scale ("cUHDRS") between "high-dose AMT-130 patients" and a "propensity score adjusted external control group derived from the ENROLL-HD natural history database."  cUHDRS combines four assessments to obtain a composite score.  The four measurements include: (1) Total Functional Capacity ("TFC"), which measures one's ability to perform daily activities; (2) Total Motor Score ("TMS"), which measures the severity of motor skill impairment; (3) Symbol Digits Modalities

---

[1] ENROLL-HD is the world's largest observational study for HD consisting of more than 20,000 people throughout Europe, North America, Australasia, and Latin America.  ENROLL-HD is also a clinical research platform and open resource for patients, researchers, healthcare professionals, and others to further the understanding of HD.

Test ("SDMT"), which measures one's processing ability, visual attention, and visuomotor integration; and (4) Stroop Word Reading ("SWR"), which measures cognitive function, attention, concentration, and psychomotor processing.

Defendants also reassured investors of the Company's alignment with the FDA during uniQure's second quarter 2025 earnings call on July 29, 2025. During the call, Defendant Kapusta rejected any notion that "FDA senior leadership [would] renege on what's already been communicated to the company," claiming that "[a]ll of our interactions with the FDA have been very encouraging and very supportive" and that "we have very clear and unambiguous feedback with the FDA."

The Class Period begins on September 24, 2025, when the Company announced topline results of the Pivotal Study. Specifically, uniQure announced that AMT-130 generated a "statistically significant 75% slowing of disease progression as measured by cUHDRS," thereby meeting the study's primary endpoint. Additionally, uniQure highlighted that AMT-130 generated a "statistically significant 60% slowing of disease progression as measured by TFC," which met the study's secondary endpoint. AMT-130 also saw "[f]avorable trends in other secondary endpoint measures of motor and cognitive function," including with respect to TMS, SDMT, and SWR.

Notably, the Company emphasized that AMT-130 saw a "mean reduction from baseline in cerebrospinal neurofilament light protein" ("CSF NfL")—which uniQure asserted was "a well-characterized, supportive biomarker of neurodegeneration." Accordingly, uniQure explained that "[e]levation in CSF NfL has been shown to be strongly associated with greater clinical severity of [HD]." Thus, based on the totality of the results and as compared to data from ENROLLHD, investors were led to believe that AMT-130 was effective in slowing the neurodegeneration in

4

patients with HD and that uniQure would file for accelerated approval of a BLA for AMT-130 in the near-term.

During the related investor conference held that same day, Defendant Kapusta touted the study results and asserted that "we believe these findings provide compelling and clinically meaningful evidence of AMT-130 disease modifying potential."

Additionally, Defendant Walid Abi-Saab reminded investors that uniQure previously discussed the trial design with the FDA and that the FDA agreed that "cUHDRS could serve as an acceptable registrational, intermediate clinical endpoint for accelerated approval."  Moreover, he stated that "[t]he FDA also agreed that ENROLL-HD . . . may be acceptable as the external control dataset for the primary analysis, with each dose matched the corresponding controls based on their baseline characteristics."

Thus, investors were led to believe that there was a high likelihood that AMT-130 would receive accelerated approval from the FDA after the Company's planned BLA submission in the first quarter of 2026.

The market acted accordingly and, in response to Defendants' statements, the price of the Company's ordinary shares jumped from a close of $13.66 per share on September 23, 2025, to close at $47.50 per share on September 24, 2025, a nearly 250% increase.  By October 29, 2025, uniQure ordinary shares were trading above $70.00 per share.

Capitalizing on the substantial increase in the value of uniQure ordinary shares, the Company publicly offered more than 5.7 million uniQure ordinary shares, and more than 500,000 pre-funded warrants to purchase ordinary shares, over the next several days after the release of the Pivotal Study results (the "September 2025 Offering").

5

Despite the fact that AMT-130's future remained uncertain pending uniQure's discussion of the Pivotal Study results with the FDA, in the prospectus supplement to the September 2025 Offering, uniQure explained that it was engaging in the September 2025 Offering in order to "fund our commercialization readiness activities" and "the potential commercial launch of AMT-130 and related commercialization activities." Through the September 2025 Offering, uniQure generated approximately $345 million in proceeds (before expenses).

Investors learned the truth about the Company's prospects and the BLA timeline for AMT-130 on November 3, 2025, when uniQure revealed that "the FDA currently no longer agrees that the data from the Phase I/II studies of AMT-130 in comparison to an external control, as per the prespecified protocols and statistical analysis plans shared with the FDA in advance of the analyses, may be adequate to provide the primary evidence in support of a BLA submission." Although the Company "plan[ned] to urgently interact with the FDA to find a path forward for the timely accelerated approval of AMT-130," uniQure admitted that "the timing of the BLA submission for AMT-130 is now unclear."

On this news, the price of uniQure ordinary shares plummeted $33.40 per share, or more than 49%, from a close of $67.69 per share on October 31, 2025, to close at $34.29 per share on November 3, 2025.

On December 4, 2025, after the end of the Class Period, uniQure confirmed that it received the final meeting minutes from the FDA regarding the agency's review of data from the Pivotal Study. According to the Company, "the FDA conveyed that data submitted from the Phase I/II studies of AMT-130 are currently unlikely to provide the primary evidence to support a BLA submission."

6

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) the design of uniQure's Pivotal Study—including comparison of the Pivotal Study results to the ENROLL-HD external historical data set—was not fully approved by the FDA; (2) Defendants downplayed the likelihood that, despite purportedly highly successful results from the Pivotal Study, uniQure would have to delay its BLA timeline to perform additional studies to supplement its BLA submission; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's ordinary shares, Tien and other members of the Class have suffered significant damages.

**ARGUMENT**

## I.    TIEN SHOULD BE APPOINTED LEAD PLAINTIFF

Tien should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice, and to do so by the later of (1) 90 days after the date of

7

publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B)(i)–(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Tien satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    Tien Is Willing to Serve as Class Representative

On February 10, 2026, counsel for the plaintiff in the Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against uniQure and other defendants, and advising investors in uniQure ordinary shares that they had until April 13, 2026—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff. *See* Hood Decl., Ex. B.

Tien has filed the instant motion pursuant to the Notice, and he has submitted a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide

testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Tien satisfies the first

requirement to serve as Lead Plaintiff of the Class.

### B.      Tien Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate

plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief

sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  To the best of his knowledge, Tien

has the largest financial interest of any uniQure investor or investor group seeking to serve as Lead

Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess

financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants

Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of

net shares purchased during the class period; (3) the total net funds expended during the class

period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill.

Aug. 11, 1997).  In accord with other courts nationwide,[2] these so-called *Lax* factors have been

adopted and routinely applied by courts in this District.  *See, e.g.*, *Chahal v. Credit Suisse Grp.

AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev

v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y.

Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229

F.R.D. 395, 404 (S.D.N.Y. 2004).  Of the *Lax* factors, courts in this District generally emphasize

approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the

PSLRA.  *See Nurlybaev*, 2017 WL 5256769, at *1; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F.

Supp. 3d 523, 530 (S.D.N.Y. 2015).

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Tien: (1) purchased 70 uniQure ordinary shares; (2) purchased a net total of 70 uniQure ordinary shares; (3) expended $3,850 in net funds on uniQure ordinary shares; and (4) as a result of the disclosures of the Defendants' alleged fraud, incurred losses of approximately $2,107. *See* Hood Decl., Ex. A. As such, Tien believes that he possesses the largest financial interest in the outcome of this litigation within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.    Tien Otherwise Satisfies Rule 23's Requirements

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re*

10

*Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Tien.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class.  '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Tien's claims are typical of those of the Class.  Tien alleges, like other Class members, that the Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning uniQure, or by omitting to state material facts necessary to make the statements they did make not misleading.  Tien, like other Class members, purchased uniQure ordinary shares during the Class Period at prices alleged to have been artificially inflated by the Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove uniQure's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Tien is an adequate representative for the Class.  As set forth in greater detail below, in Pomerantz and Holzer, Tien has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz and Holzer to the Court for approval as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Tien's interests and those of the Class.  Moreover, Tien has submitted a sworn Certification declaring his commitment to protecting the interests of the Class (*see* Hood Decl., Ex. C), and his significant losses incurred as a result of the Defendants' alleged malfeasance demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

### D. Tien Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Tien's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

12

Tien's ability and desire to fairly and adequately represent the Class has been discussed above. Tien is not aware of any unique defenses the Defendants could raise that would render him inadequate to represent the Class. Tien lives in Roselle, Illinois, and works as a research scientist.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class" (*id.* § 78u-4(a)(3)(B)(iii)(II)(aa)). *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Tien has selected Pomerantz and Holzer as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Hood Decl., Ex. D. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever

13

achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

Holzer, too, is highly experienced in the areas of securities litigation and class actions. *See id.*, Ex. E. Holzer recently recovered $22.25 million for the class of investors in *Davis v. Yelp, Inc., et al.*, No. 18-CV-400-EMC (N.D. Cal.), and $20 million for the class of investors in *Peralta v. Grana y Montero S.A.A., et al.*, No. 17-cv-1105-LDH (E.D.N.Y.), is currently serving as Co-Lead Counsel along with Pomerantz on behalf of a class of investors in *Blake v. Canoo, Inc., et al.*, No. 21-cv-2873-FMO (C.D. Cal.), and has successfully served as Co-Lead Counsel in numerous other shareholder class actions during the firm's 20-year history. *See id.*

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Tien's counsel, Pomerantz and Holzer, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Tien's selection of Pomerantz and Holzer as Co-Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Tien respectfully requests that the Court issue an Order: (1) appointing Tien as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz and Holzer as Co-Lead Counsel for the Class.

Dated: April 13, 2026                                Respectfully submitted,

POMERANTZ LLP

/s/ J. Alexander Hood II
J. Alexander Hood II
Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer
(*pro hac vice* application forthcoming)
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Counsel for Yung-Tien Tien and Proposed
Co-Lead Counsel for the Class*

15

<u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Yung-Tien Tien, certifies that this brief contains 4,198 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on April 13, 2026.

*/s/ J. Alexander Hood II*
J. Alexander Hood II
